This is People v. Veronica Reyes, and for the appellant is Ms. Cheryl Matoa, and for the applement is Ms. Marcy. Good morning, your honors. My name is Marcy Cheryl on behalf of the appellant. May it please the court. In advance of this morning's arguments, the parties were asked to be prepared to address the issue of why the 15-year sentence enhancement should not apply to this case. And with the court's permission, I'd like to address that question first because it dovetails directly into the rationale supporting our appeal. At various points throughout any trial, and certainly in Ms. Reyes' trial, the court comes to a proverbial fork in the road. And the trial judge has to decide, are we going to go right or are we going to go left? And in any case, anyone can Monday morning quarterback and talk about whether or not the judge made the right decision. But as participants in the legal system, on appeal we can only deal with the events as they actually unfolded. Accordingly, a discussion about whether the 15-year sentence enhancement should have applied at trial is really academic at this point. The fact is, the enhancement was not applied, the state did not appeal the fact that it wasn't applied, and the issue was therefore waived. Obviously, things could have been different. It could be argued that the judge could have modified the jury instructions to include a specific reference to the use of a firearm. It could be argued that it was within the judge's discretion to apply the enhancement, notwithstanding the fact that the issue of the firearm was not properly presented to the jury. Further, it could be argued that the judge could have implied the enhancement, notwithstanding the agreement of the parties that to do so would create an apprendi issue. However, the judge chose not to do any of those things. How is it within the judge's discretion if it's a mandatory enhancement? It was within the judge's discretion to decide how to handle it. The issue was it wasn't presented to the jury. But the verdict says, we find her guilty of armed robbery by brandishing a pistol. So the actual guilty verdict found a firearm. The jury came back to the judge and asked for a clarification on the instructions. There was one issue that talked about brandishing a pistol, but the jury instructions actually said armed robbery. Armed robbery with a dangerous weapon. I'm sorry, I don't have that in front of me, but it wasn't armed robbery with a firearm. The issue's instruction. Pardon? The issue's instruction did not contain the word firearm. No. It used dangerous weapon. But the actual verdict of the jury convicted your client of brandishing a pistol. But they asked for a clarification between the verdict form and the jury instructions, and the judge specifically told them the law is as on the jury instructions, which said, which did not have reference to the firearm. Is that response in the record, do you know? I believe it is, Your Honor. The point is, at that point, the judge arguably had some discretion as to how she was going to handle the issue. And I'm not arguing that any of those were the proper course of action. What I'm saying is that there are various points when the judge was confronted with a fork in the road and chose to go one direction versus the other. Had she chosen a different path, had she chosen to imply the enhancement anyway, had she chosen to change the way the jury instructions were written, we would be here arguing other appealable issues. Arguably, in that event, we would be having a discussion about Apprendi and his prodigy and whether this is a harmless error and how the court should handle that. As it is, the judge made the decision not to apply the enhancement. There is no Apprendi issue at this point because the trial judge addressed it. The court did not appeal that issue, and therefore it's forefooted any right to make that argument at this point. And I admit, this puts the court in a rather unusual position. Should you determine that the trial court should have applied the enhancement, the proper remedy would be to remand this case for resentencing to the trial court. However, it's well settled by both the Illinois Supreme Court and by Illinois law that a trial court cannot increase a sentence after it's imposed, since any application of the enhancement to my client at this point would, by definition, be an increase of the sentence that she was originally given. It's impossible for this court to correct that error, if it concedes it's an error, and apply the enhancement without violating my client's right to due process. Did you take a look at People v. White? I have that case, Your Honor. And I understand that it says you can't negotiate in ways statutory mandates, but it's not the same as the Graetz in that case that involved a plea bargain, where the clients came to an agreement. This is a situation, this isn't a plea bargain. This was the court's discretion. And I agree, the court had the discretion at that point to address the issue. Having decided within its discretion that it wasn't going to apply the mandate, to apply the mandate at this point is to effectively give the state a second bite at the apple. They didn't appeal this issue. And so to bring it up when the state didn't appeal it is unduly prejudicial to my client. Well, if the sentence is void because it's not in compliance with the statute, then what? As I said, that really does put you in an interesting position. As the state contends in its brief, one solution is for the court to determine that effectively my client is found guilty of a nonexistent crime. Put another way, the court's actions have effectively amended the indictment, to charge with armed robbery as opposed to armed robbery with a firearm. Well, the charging instrument alleged a firearm. Right. And so my contention is then that the judge's actions effectively act as a constructive amendment of that indictment. So it changes from armed robbery with a firearm to armed robbery. With a dangerous weapon. Right. Other than a firearm. Right. And as it stands, the Illinois robbery statute contains two subsections which could be relevant. First is armed robbery with a dangerous weapon, and the second is armed robbery with a firearm. But there's no dispute in this case the only weapon involved was a firearm. Exactly. And that's the conundrum it creates not only for the court but for my client. The judge decided to go right at the fork of the rope, to treat this as if it was armed robbery with a dangerous weapon, but to sentence my client as if they went left at the rope, to sentence my client as if she was found guilty of armed robbery with a firearm. No, because if she'd been found guilty of armed robbery with a firearm and sentenced for that, she'd have gotten a 21-year minimum. I understand that, but she wasn't found guilty of armed robbery with a firearm, she was found guilty of armed robbery. Well, the verdict form says by brandishing a pistol. But the record is very clear that the judge is, if she is found guilty of armed robbery then that's what the judge is sentencing her for. Well, you keep saying she was found guilty of armed robbery. Right. The verdict form says she was found guilty of armed robbery by brandishing a firearm. But if you look at the record, what the judge said is, okay, I'm in agreement with the parties that there's a possible apprendi issue because the issue of the firearm was not directly submitted to the jury. And the judge, again, the judge had discretion as to how she was going to deal with it. She could have said, I'm going to apply the mandate, because I don't have any discretion not to. And then we'd be before you talking about White and Thoreau and whether or not this is a harmless error. She didn't do that. All we can do is talk about what actually happened. She did not apply the mandate. And to apply the statutory enhancement at this point is unduly prejudicial to my client. She has been sentenced for armed robbery. She's supposed to be found guilty of armed robbery and sentenced for armed robbery, but effectively sentenced for armed robbery with a firearm without having the issue presented to the jury. And because she was acted, she was convicted or convicted essentially for armed robbery, but sentenced as if she was found guilty of armed robbery with a firearm, this is where we lie at the abuse of discretion that underlies our appeal. Courts have found that because a person must have a weapon to commit armed robbery, the presence of a weapon cannot be used to aggravate that sentence. Further, both the first and third districts have found that if the accused is armed with a dangerous weapon, the type of weapon is not a material element of armed robbery. Yet the prosecution and the trial court in this case continue to focus on the fact that a gun was used. When given the opportunity to suggest a sentence, the state recommended that Ms. Rayas receive a sentence of 21 years. It is hardly a coincidence that this is the minimum that she would have been sentenced to had the jury found her guilty of armed robbery with a firearm. In other words, the state agreed that she was convicted of armed robbery. That's the agreement of the parties. It was armed robbery. That's what the parties agreed. That's what the judge agreed. And yet they sought to sentence her as if she was convicted of armed robbery with a firearm. There is simply no other explanation for the state to seek such a harsh sentence for a first-time offender charged under accomplice theory with no evidence that the victims even knew she was there, where no one was injured, and she did not even share in whatever nominal proceeds this robbery achieved. And we readily concede that a gun is a dangerous weapon. That is the reason that Ms. Rayas was charged with armed robbery. She supplied the gun, right? It was her gun. She supplied the vehicle to transport the yin-yangs who actually went into the residence, right? She borrowed the car from a friend. She accomplished that though? Yes. The two brothers didn't do that. She did. No, and it was her testimony that she did so under duress in fear for her life and her daughter's safety. And she testified to that at the trial, right? She did. The jury didn't buy it, did they? Apparently not, Your Honor. A dangerous weapon is inherent in a crime and cannot be considered an aggravating factor. Can I ask you a question? Isn't the offense armed robbery by means of a dangerous weapon other than a firearm? Where's the evidence in this case that it was anything other than a firearm? There's no offense of dangerous weapon with a firearm. Is there? No. Again, that's the conundrum before the court. It's either a dangerous weapon or it's a dangerous weapon with a firearm. And it was within the judge's discretion to deal with that error. And the way the judge decided to deal with it was to treat this as if it was an armed robbery. Yes, my client had a gun, but she treated it as if it was an armed robbery. Had she treated it as if it was an armed robbery with a firearm, then that issue didn't go properly before the jury, and we would be here before you arguing that we have an apprentice violation. As it is, there is no apprentice violation because the judge dealt with that already. The state didn't argue it, and it's been waived. All we can do is argue the case as it comes before you, where she has been effectively found guilty of armed robbery and yet charged with armed robbery, sentenced as if she was found guilty of armed robbery with a firearm. But she wasn't sentenced as if she was found guilty of armed robbery with a firearm. I don't understand your argument. With all due respect, Your Honor, I disagree with you. Wait a minute. If she had been sentenced for armed robbery with a firearm, the sentence had to be 21 years minimum. Right. She got 12. So why are you arguing she was sentenced for armed robbery with a firearm? Because the state stood up in front of that court and asked for 21 years based on the fact that that's what she would have gotten, but for the fact that she was not charged. She didn't get that. She didn't get 21. She got 12. Right. And the judge made a point of saying that she was taking that into consideration, and the fact that but for this jury error, that's what she would have gotten. My argument is that the sentence is unduly harsh in these circumstances because the judge was trying to correct an error that was made. By giving her a 12-year sentence instead of a 21. That argument isn't making sense to me. She couldn't have gotten a 21-year sentence because she wasn't found guilty of armed robbery with a firearm. Had that been presented properly to the jury, yes, they would have added that 15-year enhancement onto it. We would be before you arguing that that was an appropriate violation because it wasn't properly before the jury. What's your argument concerning the verdict forms where the jury actually finds her guilty of armed robbery with a firearm? The judge was specifically asked. There's a discussion. There's the note. Do you think you could find it? Because I only see one note from the jury in this file. It doesn't deal with this issue specifically, but in response to that, the judge says to the jury, the law is as it states in the jury instructions and not on the verdict form. Are you talking about the juror note that says, because we're confused a bit, the charges for armed robbery state demanding money and cell phones, the first proposition defining armed robbery states intentionally took property. Yes. Does armed robbery require proof of taking? This note doesn't relate at all to the question of whether a dangerous weapon is a firearm. I concede that, Your Honor, but when the judge goes back and says the law is as it says on the jury instructions and not on the verdict form, it stands to reason that any other questions that arise, they're going to look to the jury instructions. And how do we know that the jury didn't have a question on this? And they looked at the jury instructions because the judge is already- But you concede this is the only note that the jury sent out. There's no note that refers to dangerous weapon or firearm. But the flip side of your argument, Your Honor, is that the judge didn't say, look to this only as this particular issue. It was a blanket statement that the jury instructions- In answer to this question, okay. Yes, it was in answer to that question, but her answer was a blanket statement that the law is as to the jury instructions, not as the jury verdict. Again, the judge had discretion. She could have said, in this matter, look to the jury instructions. If you have another question, ask me again. Maybe it's going to be different for a different question. But when she gives a blanket statement that the law is as on the jury instructions, then the jury has the right for any other issues to look to the jury instructions. And that's what I'm arguing that they did. And we have no proof that they didn't. And to say that they didn't is to bring up an apparent issue. Well, let me ask you this. The jury instructions didn't say dangerous weapon other than a firearm. It just said dangerous weapon. And I would contend that the average juror probably doesn't understand the distinction. Right. That's my point exactly. Wouldn't you think the average juror thinks a dangerous weapon is a firearm? Absolutely. So they weren't instructed on a dangerous weapon other than a firearm. They were only instructed on dangerous weapon. But a dangerous weapon has one set of sentencing guidelines. And a dangerous weapon that is a firearm has another set of sentencing guidelines. Dangerous weapon other than a firearm has a different guideline than dangerous weapon. There is no dangerous weapon is a firearm. Right. But we know that as legal professionals, we know that there is a dangerous weapon and then there is a dangerous weapon that is a firearm. The jury doesn't know that. And so you need to instruct them that is it a dangerous weapon or is it a dangerous weapon that happens to be a firearm. Because they have two different sets of sentencing guidelines. It was within the court's discretion to decide how to handle this issue. But the bottom line is when you review the totality of the circumstances, it is clear that the element given the most weight, in fact undue weight, in sentencing Ms. Reyes to 12 years is the fact that a gun was involved. The court clearly abused its discretion in considering the presence of a gun to the exclusion of all other considerations and notwithstanding the fact that the defendant was supposed to be sentenced for armed robbery and the firearm was not supposed to be taken into consideration. A judge has many decisions to make when she comes to a fork in the road and many chances to go back during the trial and revisit that issue to make sure that the path she chose is the correct one. And as I said when I began, there are many potential ways, there are ways potential violations of a pending could have been addressed. They were arguably within the judge's discretion. But the trial court decided that Ms. Reyes was found guilty of armed robbery and she should have been sentenced for such. Armed robbery with a firearm was no longer on the table when it came to sentence and because the state waived the right to armed robbery, it was the judge's obligation and Ms. Reyes' right to be sentenced for that crime and that crime alone. And despite the judge's obligation and Ms. Reyes' right, the court indicated that the 12-year sentence was not only keeping in mind the state's recommendation for 21 years based on the armed robbery with a firearm statute, but also the fact that, but for the jury instructions, she would have been looking at 21 years. It was the gun and only the gun that resulted in the sentence of 12 years. Yes, it's less than 21 years. It's still more than she should have gotten. The judge didn't consider any continuum of harm in justifying the heavy reliance on the gun as an aggravating factor. The court did not say the use was particularly grave or that the defendant's conduct was particularly heinous. There was simply no discussion of the defendant's conduct at all. This was not a brutal crime. Nobody was injured. The only evidence that the gun was even loaded came from the defendant herself. There was no evidence that anyone was threatened with serious harm. In fact, one of the three people who was in the apartment was asked, were you scared? And they answered, a little bit. That doesn't sound like serious harm to me. Ms. Reyes was not present during the commission of the crimes and there is no evidence that any of the victims even knew she was there Other than the fact that the gun was used, there are no factors in mitigation. Contrast this with the factors offered in mitigation. I'm sorry, no factors in aggravation. Contrast this with the factors offered in mitigation. Ms. Reyes has no criminal history. She expressed regret and remorse for her actions. Her conduct was the result of circumstances that are unlikely to be repeated. She is unlikely to commit another crime. She attends church regularly. She is a single mother to a minor child. She returned to school to get her GED and is pursuing additional education. She is capable of rehabilitation and returning to society as a productive citizen. She has had exemplary behavior since her arrest. While the many factors in mitigation are balanced against the presence of a gun, the only factor really offered in aggravation, it's clear that the sentence is unduly harsh. The court did not consider the degree and gravity of the defendant's specific conduct or the nature and extent of each element of the offense as it applies, as committed by the defendant. Now having said all this, the bottom line is this sentence is just unduly harsh. The court is here to do justice, to make sure that the court has not made an error in this case. We are asking you to ensure that justice has been achieved. My client made a stupid decision. This whole situation is truly just stupid. There was no premeditation. The actual perpetrators went to the home of people they knew in broad daylight with no attempt to disguise themselves and ended up stealing $150 and three cell phones. My client sat in the car. Justice is not served by her spending 12 years in prison for her stupidity. The appellate court is supposed to act as a safety net for just such situations. Justice is simply not served by forcing a first-time offender to spend 12 years, 12 years that she could and would be a productive member of society and a supportive mother, spending those 12 years in prison. Justice will only be served if this court abides by its mandate to not let such abuses of discretion slip through unchallenged. The judge abused her discretion in giving undue weight to the use of the gun in light of the fact that Ms. Reyes, the totality of the circumstances. Accordingly, we respectfully request this court reduce Ms. Reyes' sentence to the mandatory minimum of six years for armed robbery. Thank you for your attention. Thank you. You'll have additional time when we follow up. Thank you. Ms. Brooks. May it please the court and counsel, my name is Anastasia Brooks and I represent the people in this case. First of all, I would like to address the argument that this court had requested the counsel to be prepared to discuss, which is the potential requirement that the 15-year enhancement would have to apply to the armed robbery convictions. The primary argument, it seems to be, is what happened below, is that there was an agreement by the parties and accepted by the trial court that it would be unconstitutional to apply the 15-year add-on in this case because of what was termed to be an apprendee problem. The state has not appealed that, as the defendant notes, and because the supremacy clause requires that the Constitution be treated superior to statutes, therefore it would be unconstitutional to apply the particular part of the penalty statute requiring a 15-year add-on for firearm use in the armed robbery. Therefore, that would make it not required as a matter of considering the sentence to be void. So if there was, in fact, an agreement that it would be unconstitutional and that agreement has not been appealed by either party and there would be no requirement for this court to deem the sentences to be void. The fact that the defendant does cite, though, that the sentences cannot be increased on appeal, I'm not sure she has a case that says that that rule would, in fact, apply even if the sentences were deemed to be void. However, as I said, I don't think that the agreement was void. The sentence was void for that reason. Another possible reason is the post-trial agreement of the parties could be deemed a constructive guilty plea, albeit to a nonexistent offense because the offense of armed robbery with a dangerous weapon was no longer in existence after the amendment by Public Act 91-404. It was changed into with a firearm and the other subsection is with a dangerous weapon other than a firearm. So there's no longer simply armed robbery with a dangerous weapon. So the fact is firearm here would not qualify as armed robbery with a dangerous weapon other than a firearm. But the fact is that the laws in the state is that it is possible for a defendant to plead guilty to an nonexistent crime. That is something that is legal in the state. So that would also mean that the sentence would not be void because if it were, in fact, a constructive guilty plea to a nonexistent offense, that would not constitute a basis for vacating the sentence. And so for those reasons, also the state suggests that the defendant does have the right to effective assistance of counsel and appeal and if this court deemed the sentence to be obviously void such that the defendant would be deprived of effective assistance of appellate counsel by pursuing this appeal when she could simply dismiss the appeal and avoid giving the court jurisdiction that it would need in order to vacate the sentences as void and remand for a 21-year minimum. The other possibility is that if this court were to deem the sentences void and insist on applying the 21-year minimum, there should at least be an opportunity for the state's attorney's office to exercise their discretion if they want, and I'm not speaking for the state's attorney's office as to what their actual decision would be, but they should at least be given the opportunity to maybe consider entering a post-trial nollie cross of the armed robbery counts if that would be something that would be within their power and discretion even if it were at this stage of the case. Can the defendant still withdraw the appeal at this point in time? I'm not sure if that requires this court's agreement or not or whether that would be something that the defendant would have a unilateral right to insist upon. I'm not sure if that is something that would be... The defendant would have to make a motion, and of course this court rules on motions, and conceivably perhaps the court could deny that motion, but the state would not object to her request to dismiss the appeal if she were to make one even at this point in the case. So that's from the state's perspective, the various possibilities that would be considered on those issues, and I would entertain any questions. What was that first possibility you mentioned? I'm sorry. The first possibility I said was that there was an agreement that it would be unconstitutional to apply the 15-year add-on because of what was deemed to be an Apprendi problem. Apprendi dealt with the difference between sentencing factors and elements of crimes and said essentially you cannot have a sentencing factor that increases the penalty range for an offense, and this is not a sentencing factor. However, this is actually an element, and there was a case before Apprendi, several years before, that said that elements have to be submitted to the jury and proven beyond a reasonable doubt. What about the fact that the jury signed the verdict form that found her guilty of brandishing a pistol during the robbery? Well, that certainly is one fact that seems to be against the defense position. Troublesome? Troublesome for the defense position, although the defendant does have a point that what actually the instructions say that has to be proved is the jury. The verdict forms are not part of the issue's instructions. So that doesn't necessarily solve what was deemed to be a constitutional violation, that the remedy that was agreed upon was to sentence to 6 to 30 and not have the 15-year add-on. Even though White was a plea, and I recognize White was a plea, didn't the Supreme Court say the parties and the court don't even have the right to agree to a sentence that is not in compliance with the mandatory minimum? Well, that case was not a non-existent crime case. It was also, was that the first-degree murder case? Right. It was recent. And I think in that case, I remember, I don't have it in front of me, but they did say that there is one offensive first-degree murder in Illinois, and they distinguish it. I'm trying to remember if they actually distinguish it from cases like armed robbery, where there in fact are multiple versions of the crime. Here, it seems like they might have invented a third version, a sort of pre-91-404 version of the crime that dealt with just a dangerous weapon with no other qualification. So in that case, it could be possible to distinguish White. Well, it was a statutory add-on. It was a 15-year enhancement because of the use of a firearm in the murder. So it's very similar. Right, except for the fact that because there's only one murder offense in Illinois, the way that they treated, they treated first-degree murder specially, because there is only one crime of murder in Illinois, and it's first-degree murder. And if it also is first-degree murder with this special circumstance, then the enhancement is mandatory. That was the gist of that case, and I think this is a different situation because there's not just simply one crime of armed robbery in Illinois. And in fact, because it's possible to add, to plead guilty to a nonexistent crime, I think then also that makes it distinguishable for that reason as well. Did you cite a case about this pleading guilty to a nonexistent crime, or do you have a citation? I did, Your Honor, and if I could find it in my brief. Turner, 5th District, 2001, on page 5 of my brief. I'm not sure if this case is on fours with Turner, but at least this is possible authority, which could be relied on to not vacate the sentence as void. With respect to the merits of the defendants, I'm sorry, there was one other possibility. An issue that I've seen raised in other contexts, although the defendant doesn't press the point here, which is that when 91-404 was considered to be unconstitutional in the case of people by the Illinois Supreme Court, that there was language in there referring to void ab initio, and the argument could be made, not that I agree with it or the state would agree with this, but the argument could be made that because the legislature never reenacted the firearm enhancements that were invalidated in Hoss Child for the offense of armed robbery with firearms, because it never reenacted those provisions from 91-404, simply amending the Armed Violence Act to remove the impediment to reenacting that would not, in fact, automatically, this is the argument, would not automatically spring the 15-year enhancement back into life. It simply is removing the impediment to reenacting them, which, of course, had never been reenacted. So that would be an argument to make that I've seen in at least one other case in the trial courts, but I'm not sure there is any authority on that particular issue. And, of course, people do not agree with that argument because that, of course, would result in vacating numerous sentences for such crimes that have resulted since the legislature amended the definition of armed violence to remove those cases in which the felony element of armed violence, if that other felony has any element relating to the use of a weapon, so that would remove armed robbery from the scope of armed violence and there would no longer be any proportionality problem. But that doesn't necessarily answer the question of whether the legislature had to reenact those provisions. As to the merits of the defendant's arguments, the defendant claims here that there was no threat of serious harm, although the trial court did note that a loaded gun had been pointed at one of the victim's head. And one of the things the trial court did rely on was the threat of, quote, very serious physical harm. And so this was a situation where the trial court could consider the nature and extent of the elements and, in fact, if the defendant were constructively pleaded guilty to armed robbery with a dangerous weapon, then the firearm nature of that dangerous weapon, the fact it was loaded, the fact it was used and pointed in a certain way, would not be implicit in the crime or inherent in the crime and, therefore, could be considered an aggravation by the trial court as part of the facts of the offense. So it's also possible to consider crimes in which the defendant could have been charged but was not charged with or analogous to the fact here, if the defense was not deemed to have been sentenced for the offense of armed robbery with a firearm, then the firearm is no longer an element of the crime that she was actually sentenced for. And so there was no agreement to withdraw the existence of the 15-year enhancement for other cases that would be constitutional to apply, that the judge was not barred from considering the existence, just the mere existence of the statutory enhancement. And so there's also no prejudice from the consideration of this because the sentence was, in fact, based on the very serious nature of the charges and the very strong factor of deterrence from the trial court's perspective. With respect to accomplices, the accomplices got 18 years out of the 6 to 30 under their pleas, and even if the defendant was deemed to have sort of pled guilty and she did receive a trial, she only got 12, and considering the difference in the roles of the offenses, still got less time than the accomplices who actually entered the apartment and handled the weapons inside the apartment. So for that reason, there was no need for the trial court to give any extra weight to the fact that the accomplices received 18 years under their plea agreements. And considering location defense, this is a remark that the trial court made in referring to, responding to the defense's claim that this was an appallingly excessive sentence. And the remark was that this is Central Illinois, this is a big deal, this is a very serious offense in Central Illinois. And that remark is not, first of all, it doesn't show what the trial court, that the trial court considered anything improper in aggravation when actually imposing the sentence, because the judge didn't know when the judge imposed sentence that the defense was going to come from Chicago and say, well, this was a really excessive sentence. So the fact that this remark was made on reconsideration was simply to respond to the claim that this was, in fact, an overly excessive sentence by noting that this is a very serious crime. And of course, the fact is armed robbery with a firearm is a very serious crime anywhere, regardless of whether it occurred in Livingston County or Chicago. So therefore, this was not a case in which the crimes became improperly aggravated just because the defendant committed them in Livingston County. The judge was merely contrasting the fact that, at least from the judge's perspective, and the error doesn't apply to, it would not be error if the judge were wrong about this, but at least the judge's personal speculation was that these crimes might not be treated as severely in Chicago. And even if that were not true, or even if it were true, it doesn't matter. The fact is the judge never actually enhanced the crime, the sentence, by saying this is a very serious offense, and it is a serious offense anywhere. So for those reasons, the people do request this court to affirm, and I'll entertain any further questions. I don't believe so. Thank you, Your Honors. Bottle? Your Honors, I propose you listen to the state's suggestions as to possibilities of what could be done. Judge McCullough has asked if you heard the state's recommendations about the various alternatives that are before us, about what could be done in this case. I did, and I'm hesitant to go on the record stating my opinion without having some more time to consider them more fully. If I could have a moment to read through what she said. Well, go ahead with your rebuttal argument. I just wanted to address a couple points that were brought up. One, I wanted to, again, distinguish this case from White. In the case in White, the issue of the sentence was actually an issue that was appealed. In that case, the defendant had entered into a plea bargain that they then wanted to rescind, and it was the defendant, in fact, who appealed that issue. And this case is distinguishable from that, in that the issue of the sentence enhancement was not appealed to this court. I would like to direct the court's attention to the Supreme Court ruling in the case of Green Law, where the court found that absent a government appeal or a cross-appeal, the sentence that the defendant received could not be increased. Given that the state has not appealed this issue, the issue has been waived. And finally, to counsel's point as to whether or not we have a case on point on the issue of authorization of the court to increase the term of sentence, I'd like to direct the court's attention to People v. Jones, a Supreme Court decision from 1995 in the state of Illinois, that the court is not authorized to increase a term of imprisonment where the court reconsiders the criminal sentence that was originally imposed. So that brings me back to the point that even if this is remanded to the trial court for resentencing, it's beyond the trial court's discretion at this point to imply that enhancement. We see cases where the trial court mistakenly sentences somebody after a verdict to a sentence that's not allowed by statute. We remand the case for resentencing, and they have to increase the sentence to at least the minimum that's required by statute. So I'm not sure what your cases say, but it's not a blanket rule. I believe in those cases it's distinguishable in that the sentence is still within the range that was permissible at the time the sentence was enacted. In this case, the range that was permissible was 6 to 30 years. In enacting this, the enhancement would make the range from 21 to 45 years, which, again, creates an apprendee issue. And it seems to be in violation of both the Illinois Supreme Court and the Supreme Court's ruling that due process will be... I'm sorry, the Supreme Court says in North Carolina v. Pierce that due process may prohibit a judge from imposing a more severe sentence when a defendant has been convicted following a retrial because a greater sentence may penalize the defendant's right to challenge his conviction in sentence. I mean, in this case, the issues that... It's an accepted rule. That's a different issue than what we're talking about here. Well, I believe it's applicable, though, because in this case, the issues that would give rise to that have not been appealed by the state, and therefore we haven't had a chance to argue them. Effectively, you go back and if the defendant is... We're not here arguing whether or not the enhancement applies, because our position is that the trial court has made that decision and that the state has not argued that, and therefore the issue has been waived. It's a completely different story if the enhancement applies. Then we're before you arguing a separate issue. But to go back and sentence my client with a 15-year enhancement is a violation of urgent process because we haven't... That issue is not properly before you today. Do you have any other questions? Would it be okay if I just take a minute to... If it's okay with counsel to read through the propositions and give you my opinion on that? Sure, if you like. Thank you. Yeah. Absent the opportunity to look at it and give it more due weight, all I can tell you at this point is that we would certainly consider those. I couldn't hear what you said. I'm sorry, Your Honor. I said that absent the opportunity to really look at those and reflect them and give them due consideration, all I can tell you at this point is that we will certainly consider them. You can always go and listen to the audio. Yes, Your Honor. We will certainly do that. I think it would be unfair to my client to give you an off-the-cuff answer to that without having actually looked at it. Thank you. Thank you. This matter will be taken under advisement. We'll stay at a recess until 1 o'clock.